### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES CONNORS,                                   : | |
|                                                   : | Civil Action No. 08-3940 (JAP) |
|                       Petitioner,       : | |
|                                                   : | |
|             v.                                     : | **OPINION** |
|                                                   : | |
| BRUCE HAUCK, et al.,                           : | |
|                                                   : | |
|             Respondents.     : | |

**APPEARANCES:**

> CHARLES CONNORS, Petitioner <u>pro</u> <u>se</u>
> #419516/SBI# 987280A
> Northern State Prison
> P.O. Box 2300
> 168 Frontage Road
> Newark, New Jersey 07114

> JEFFREY I. RUBIN, ESQ.
> MERCER COUNTY PROSECUTOR'S OFFICE
> Mercer County Court House
> Broad and Market Streets
> Trenton, New Jersey 08650-0068
> Counsel for Respondents

**PISANO**, District Judge

Petitioner Charles Connors, a convicted state prisoner, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court conviction and sentence. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

I.   <u>BACKGROUND</u>

A.   <u>Statement of Facts</u>

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, <u>see</u> 28 U.S.C. § 2254(e)(1), will simply reproduce the factual recitation as set forth in the unpublished opinion of the Superior Court of New Jersey, Appellate Division, decided on October 9, 2002, with respect to petitioner's direct appeal from his judgment of conviction and sentence:

> The facts can be briefly stated.  Defendant's armed robbery conviction arose out of a shoplifting incident at Rite-Aid pharmacy in Trenton.  Defendant walked into the store and immediately attracted the attention of two security officers because he was wearing women's pants and an orange-reddish wig.  With a pocketbook, dangling from his forearm, defendant, a pre-operative transsexual, walked up and down different aisles, eventually stopping in the cigar section.  Defendant picked up a $15 box of cigars and concealed it under his left armpit inside his black leather jacket.  Defendant walked over to the cashier and was talking with the cashier when he was confronted by the security officers.
>
> Defendant denied having any store merchandise and according to the security officers, became belligerent, refusing to accompany the officers.  Defendant stuck his hand in his pocketbook and said "I'll cut you, I killed once, I killed one M.F., and I'll kill another one," and started backing towards the door with his hands in his pocketbook.  One of the security officers also testified that defendant opened his handbag and the officer noticed a knife handle protruding from the pocketbook.  Defendant took the cigars from his coat, returned them to th spot on the shelf, and went toward the door with his hands in his pocketbook.
>
> The officers insisted that defendant follow them to the back room.  Defendant refused and left the store.  Outside, according to one of the officers, defendant took out a knife

2

from his pocketbook, held its blade upward and threatened to kill the officer.

Defendant testified at trial.  He explained that he was merely pricing the cigars for his grandfather, and when he bent over some cigars, a security officer approached him aggressively.  Defendant denied that he tried to conceal the cigars in his jacket and that he ever threatened anyone. The knife he carried was a "paring" knife that he used to cut his nails and cuticles.

(Ra14,[1] October 9, 2002 Appellate Division Opinion at pp. 3-4).

B.  Procedural History

On July 22, 1999, a Mercer County Grand Jury indicted

petitioner, Charles Connors ("Connors"), under Indictment No. 99-

---

[1]  "Ra" refers to the state court record provided by the respondents as follows:

Ra1   Grand Jury Indictment
Ra2   January 30, 2001 trial transcript
Ra3   February 6, 2001 trial transcript
Ra4   February 7, 2001 trial transcript
Ra5   February 14, 2001 trial transcript
Ra6   February 15, 2001 trial transcript
Ra7   February 16, 2001 (Part I) trial transcript
Ra8   February 16, 2001 (Part II) trial transcript
Ra9   April 20, 2001 trial transcript
Ra10  February 28, 2003 transcript of re-sentence
Ra11  March 31, 2006 transcript of Post-Conviction Relief ("PCR") Motion
Ra12  Petitioner's brief and appendix on direct appeal
Ra13  State's response brief and appendix on direct appeal
Ra14  October 9, 2002 Appellate Division Opinion and November 25, 2002 Order of New Jersey Supreme Court denying certification
Ra15  April 27, 2006 Order denying the state PCR petition
Ra16  Petitioner's brief and appendix on appeal from denial of his state PCR petition
Ra17  State's response brief and appendix on state PCR appeal
Ra18  September 24, 2007 Appellate Division Opinion and November 13, 2007 Order of the New Jersey Supreme Court denying certification on state PCR appeal
Ra19  March 31, 2003 Judgment of Conviction on re-sentencing

7-717.  The Indictment charged Connors with first-degree armed robbery, third-degree possession of a weapon (knife) for an unlawful purpose, fourth-degree unlawful possession of a weapon (knife), and fourth-degree certain persons not to have a weapon (knife).  (Ra1).

Connors pled not guilty to the charges.  He was tried before a jury and the Honorable Andrew J. Smithson, J.S.C., on January 30, 2001, and February 6, 7, 14, 15 and 16, 2001.  On February 16, 2001, the jury found Connors guilty on the charges of first-degree armed robbery and fourth-degree unlawful possession of a knife.  The jury acquitted Connors on the second count of third-degree possession of a knife for an unlawful purpose. Thereafter, upon Connors' stipulation that he had been convicted of a previous aggravated assault, the jury found Connors guilty on the fourth count of fourth-degree certain persons not to possess a weapon.  (Ra8, February 16, 2001 (Part II) trial transcript at 14:24-15:6).

On April 20, 2001, Judge Smithson granted the State's motion for an extended term, but denied the motion for sentencing under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.  Connors was sentenced to an extended aggregate term of 31½ years in prison with 15 years and 9 months parole ineligibility.

Connors filed a direct appeal from his conviction and sentence with the Superior Court of New Jersey, Appellate

4

Division.  On October 9, 2002, the Appellate Division affirmed the conviction but remanded the matter for resentencing pursuant to NERA.  The Supreme Court of New Jersey denied certification on November 26, 2002.  Connors was re-sentenced, on or about March 31, 2003, to a 17-year prison term on the robbery conviction subject to the 85% NERA parole bar.  The consecutive sentence of 18 months in prison with a nine month parole bar was re-imposed with respect to the weapons conviction (Count IV).

On May 23, 2003, Connors filed a verified petition for post-conviction relief ("PCR") in state court.  A hearing on the PCR petition was conducted on March 31, 2006.  (Ra11).  Judge Smithson denied the petition in a written opinion and order dated April 27, 2006.  (Ra15).

Connors appealed from the denial of his state PCR petition to the Superior Court of New Jersey, Appellate Division.  The Appellate Division affirmed Judge Smithson's denial of post-conviction relief in a per curiam opinion decided on September 24, 2007.  State v. Charles Connors, Docket No. A-5423-05T4 (App. Div. 2007).  The Supreme Court of New Jersey denied certification on November 15, 2007.  (Ra18).

Connors filed this habeas petition pursuant to 28 U.S.C. § 2254, on or about August 1, 2008.  The State filed a response to the petition on July 10, 2009, with the relevant state court record.  Connors did not file a traverse.

## II.  STATEMENT OF CLAIMS

Connors asserts the following claims in his petition for habeas relief:

A.  The trial court erred in the manner in which it responded to a question from the jury during deliberations, which adversely impacted upon the jury's verdict finding petitioner guilty of first degree robbery.  (Petition, ¶ 12.A., Ground one).

B.  The petitioner was denied his right to a fair trial as a result of the prosecutor's reference to petitioner's "impecuniousity."  (Pet., ¶ 12.B., Ground two).

C.  The petitioner was denied his right to a fair trial as a result of the prosecutor's cross-examination of petitioner eliciting his prior criminal record after it had been fully disclosed during direct examination.  (Pet., ¶ 12.C., Ground three).

D.  The jury verdict was against the weight of the evidence. (Pet., ¶ 12.D., Ground four).

The State essentially contends that the petition should be denied for lack of substantive merit or because it fails to raise claims of federal constitutional dimension.  The State also

argues that the petition is time-barred under 28 U.S.C. §
2244(d).  This Court finds that the petition was timely filed,
and thus, will address the merits of the petition below.

### III.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than
more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429
U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).
A pro se habeas petition and any supporting submissions must be
construed liberally and with a measure of tolerance.  See Royce
v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney
General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v.
Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399
U.S. 912 (1970).  Because petitioner is a pro se litigant, the
Court will accord his petition the liberal construction intended
for pro se petitioners.

Section 2254(a) of Title 28 of the United States Code gives
the court jurisdiction to entertain a habeas petition challenging
a state conviction or sentence only where the inmate's custody
violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to
deciding whether a conviction violated the Constitution, laws, or
treaties of the United States."  Estelle v. McGuire, 502 U.S. 62,
67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County
Probation Dep't, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal

courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982).  Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," Engle v. Isaac, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

In addition to the case law, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated

petitioner's federal claim on the merits.  <u>See</u> 28 U.S.C. §
2254(d).  Where a federal claim was "adjudicated on the merits"
in state court proceedings, the writ must be denied unless
adjudication of the claim either involved an unreasonable
application of clearly established federal law, or was based on
unreasonable determination of the facts in light of the evidence
before the state court.  <u>See</u> 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only
claims that were "adjudicated on the merits in State Court
proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the
merits' has a well settled meaning: a decision finally resolving
the parties' claims, with <u>res judicata</u> effect, that is based on
the substance of the claim advanced, rather than on a procedural,
or other, ground."  <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir.
2004)(citations and internal quotation marks omitted), <u>reversed
on other grounds sub nom</u>.  <u>Rompilla v. Beard</u>, 545 U.S. 374
(2005); <u>see also</u> <u>Rolan v. Vaughn</u>, 445 F.3d 671, 678 (3d Cir.
2006).  A state court may render an adjudication on the merits of
a federal claim by rejecting the claim without any discussion
whatsoever.  <u>See</u> <u>Rompilla</u>, 355 F.3d at 247.  <u>See also</u> <u>Chadwick v.
Janecka</u>, 312 F.3d 597, 605-06 (3d Cir. 2002), <u>cert</u>. <u>denied</u>, 538
U.S. 1000 (2003)(<u>citing</u> <u>Weeks v. Angelone</u>, 528 U.S. 225, 237
(2000)(even a summary adjudication by the state court on the
merits of a claim is entitled to § 2254(d) deference)).  On the

other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply." Rolan, 445 F.3d at 678.  See also Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

If the New Jersey courts adjudicated the petitioner's claims on the merits, this Court may not grant relief unless either § 2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. § 2254(d).  Accordingly, this Court may not grant habeas relief to the petitioner unless the adjudication of a federal claim by the New Jersey courts involved an unreasonable application of clearly established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and Connors is in custody in violation of the Constitution or laws or treaties of the United States.  See 28 U.S.C. § 2254(a), (d)(2).

When the grounds raised in the petition are governed by 28 U.S.C. § 2254(d)(1), the court must begin its analysis by determining the relevant law clearly established by the Supreme Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to

10

the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000).  A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[2] See id. at 409-10. "The unreasonable application

---

[2] See also Marshall v. Hendricks, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.")(citations and internal quotation marks omitted).

test is an objective one—a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Thomas v. Varner, 428 F.3d 491, 497 (3d Cir. 2005) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." Id.; see also 28 U.S.C. § 2254(e)(1). The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence. See Duncan, 256 F.3d at 196 (*citing* 28 U.S.C. § 2254(e)(1)). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.  ANALYSIS

A.  Error in Jury Charge

In his first claim, Connors asserts that the trial judge erred in how he responded to a jury question during deliberations, which adversely impacted on the jury's verdict of guilty on the first-degree robbery charge. Connors does not articulate how his constitutional rights were violated.

Connors raised this claim on direct appeal.  The Appellate Division found no merit to petitioner's claim.  Specifically, the court ruled:

Defendant's first appeal point argues that the supplemental jury instruction with respect to the armed robbery was erroneous.  The jury requested a legal definition of "armed with a deadly weapon" and further asked whether the weapon had to be visible.  The judge instructed the jurors that their question applied to the robbery count and reminded them that he had already instructed on the robbery elements and that second-degree robbery was graded as a first-degree offense when defendant was armed with, used or threatened the immediate use of a deadly weapon. The judge also reminded the jury that he had already explained the definition of deadly weapon, but repeated that a legitimate instrument, such as a two-inch blade knife, could be transformed from a cosmetic tool into a deadly weapon depending upon the circumstances.  The judge stressed that to find that the tool was a weapon, the tool must be either used as a weapon or intended to be used as a weapon. The jurors nodded their heads and seemed satisfied.

But the next day, the jury wrote a note asking whether defendant, to be armed with a deadly weapon, had to have intent or could simply possess the knife.  The judge responded with a letter, which instructed the jurors that to be armed with a weapon in a robbery, defendant had to do more than simply possess the weapon, and had to use the weapon in connection with the robbery or if the weapon was not visible, "there must be some manifestation of an intent to se the 'weapon' in the robbery."

To be guilty of first-degree robbery, defendant must attempt to kill his victim, purposefully attempt to inflict serious bodily injury upon his victim, or be armed with, use or threaten the immediate use of a deadly weapon.  <u>N.J.S.A.</u> 2C:15-1(b).

One of the security officers testified that in the Rite-Aid parking lot, defendant pulled out the knife, and held it "like he was gonna use it."  Defendant then threatened the security officer by saying "I'll kill you. Don't fuck with me, I'll kill you."  If the jurors believed the security officers, the elements of first-degree robbery were established.

There is no record of the judge having consulted with counsel before supplementing his instructions to the jury. Certainly, such consultation is preferred, State v. Whittaker, 326 N.J. Super. 252, 262-63 (App. Div. 1999), however, we cannot fault the advise that was given. The supplemental instructions addressed the testimony presented by both sides and accurately answered the jury's question. There was no error here.

(Ra14, October 9, 2002 Appellate Division Opinion at pp. 4-6).

Generally, a jury instruction that is inconsistent with state law does not merit federal habeas relief. Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

[t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record. In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution. And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly." "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted). Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law." Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998). See also In re Winship, 397 U.S. 358, 364

14

(1970) ("the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); Sandstrom v. Montana, 442 U.S. 510, 523 (1979) (jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis. Smith v. Horn, 120 F.3d at 416-17; Neder v. United States, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." Id. at 418 (citing California v. Roy, 519 U.S. 2, 5 (1996)). In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

Middleton v. McNeil, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

Here, the Appellate Division evaluated the overall jury charge and found that the trial court's supplemental instructions

accurately answered the jury's question, and was consistent with the testimony presented by the State and defense counsel at trial. Moreover, the supplemental instruction was consistent with the state law regarding the necessary elements of a first-degree robbery offense. The Appellate Division found no error in the supplemental instruction.

This Court finds that the decision of the Appellate Division is neither contrary to nor an unreasonable application of the applicable federal law, nor is the decision based upon an unreasonable determination of fact. The Appellate Division noted that there was testimony from one of the security officers that supported the elements of a first-degree robbery charge. Therefore, the supplemental instruction did not operate "to lift the burden of proof on an essential element of an offense as defined by state law." Smith, 120 F.3d at 416 (1997); see also, Sandstrom, 442 U.S. at 523. Put simply, petitioner's claim lacks constitutional dimension. Accordingly, Connors is not entitled to relief on this claim.

B.  "Impecunious" Comment

Next, Connors claims that he was denied his right to a fair trial as a result of the prosecutor's reference to petitioner as being impecunious. Connors also raised this claim on direct appeal, and the Appellate Division rejected it. The court found:

> Defendant also argues that the jury was led to believe that he was impecunious and more likely to steal the cigars

16

because the State presented evidence that defendant possessed only ten cents and no credit cards when he was arrested.  It is generally improper to utilize a defendant's poverty to establish criminal motive.  <u>State v. Mathis</u>, 47 N.J. 455, 472 (1966); <u>State v. Stewart</u>, 162 N.J. Super. 96, 100 (App. Div. 1978).

The judge allowed this evidence, however, to rebut the defense that defendant would have paid for the cigars if given an opportunity.  It was brought out during cross-examination of one of the security officers that Rite-Aid would not give suspected shoplifters an opportunity to pay for concealed merchandise.  It was store policy that once an item was concealed on the suspect, the suspect was not to be let out of the store.

While defense counsel argues he was merely attempting to show that the store policy failed to provide consumers with an opportunity to return the merchandise to its original location before leaving the store, the cross-examination also raised an inference that defendant might have paid if he were given the opportunity.  The prosecutor was permitted to rebut the latter inference, and we do not believe the trial judge abused his discretion by admitting this evidence.

(Ra14, October 9, 2002 Appellate Division Opinion at pp. 6-7).

In this case, the Appellate Court's ruling was based solely on state law and state rules of procedure and evidence. Generally, matters of state procedural law are not reviewable in a federal habeas petition.  The Supreme Court has stated that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991).  This is generally true even where the state court incorrectly applied state law.  <u>Id</u>. at 71. Rather, a federal habeas claim will lie only where a state court

determination violated some federally protected right.  Id. at 68.  The Third Circuit likewise stated:

> Our review of a federal habeas corpus petition is limited to remedying deprivations of a petitioner's federal constitutional rights. We can take no cognizance of non-constitutional harm to the defendant flowing from a state's violation of its own procedural rule, even if that rule is intended as a guide to implement a federal constitutional guarantee.

Wells v. Petsock, 941 F.2d 253, 256 (3d Cir. 1991), cert. denied, 505 U.S. 1223 (1992); see also Smith v. Zimmerman, 768 F.2d 69, 73 (3d Cir. 1985)("a 'mere error of state law' is not a denial of due process").

Here, it is plain that Connors was not denied due process, a fair trial, or other federally protected right when the trial court allowed the prosecutor to rebut the inference that Connors would have paid for the cigars had he been given the opportunity. The trial judge did not abuse his discretion in admitting such evidence when it was offered solely to rebut the inference raised by defense counsel.  There was no error, and Connors cannot show prejudice where the matter was placed in issue by his trial counsel.  Consequently, Connors has failed to establish that admission of this evidence resulted in prejudice so great as to deny a him his Fifth Amendment right to a fair trial.  Therefore, this claim will be denied for lack of merit.

C.   Prior Criminal Record

In his third claim, Connors asserts that he was denied a fair trial where the prosecutor was permitted to cross-examine petitioner and elicit his prior criminal record, even though it had been disclosed on direct examination.  This claim was raised on direct appeal, and the Appellate Division found that the claim was "without sufficient merit to warrant discussion in a written opinion."  (Ra14, October 9, 2002 Appellate Division Opinion at pg. 7).

This Court finds no constitutional violation here.  Connors admits that his criminal record was introduced on his direct examination, and thus, it was subject to cross-examination.  This claim is devoid of any merit or constitutional magnitude.  Simply asserting that he was "denied his right to a fair trial," without more, does not serve to muster a claim of constitutional deprivation.  Therefore, this claim will be denied for lack of merit and for failure to state a habeas claim of constitutional magnitude.

D.   Jury Verdict Against the Weight of Evidence

Lastly, Connors argues that the jury's verdict was against the weight of evidence.  He raised this claim on direct appeal, and the Appellate Division again found that the claim was "without sufficient merit to warrant discussion in a written

opinion." (Ra14, October 9, 2002 Appellate Division Opinion at pg. 7).

A claim that the jury's verdict is against the weight of the evidence raises a due process concern. Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue. Jackson, 443 U.S. 307, 319 (1979). This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324, n. 16. See also Orban v. Vaughn, 123 F.3d 727 (3d Cir.1997), cert. denied, 522 U.S. 1059 (1998). As noted above, state court factual determinations are presumed to be correct. See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000).

Thus, Connors' claim is governed by Jackson v. Virginia. In Jackson, the Supreme Court determined that, "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254 -- if the settled procedural prerequisites for such a claim have otherwise been satisfied -- the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. The Court instructed a federal habeas corpus court "faced with a record of historical facts that supports conflicting inferences

[to] presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and [to] defer to that resolution." Id. at 326; see also House v. Bell, 547 U.S. 518, 538 (2006)("When confronted with a challenge based on trial evidence, courts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict"). The Court emphasized that "the standard ... does not permit a court to make its own subjective determination of guilt or innocence." Jackson at 320, n. 13. "[U]nder Jackson, the assessment of credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995). The question is "whether, viewing the evidence in the light most favorable to the state, it was objectively unreasonable for the Appellate Division to conclude that a rational trier of fact could have found, beyond a reasonable doubt that [petitioner] was guilty[.]" Kamienski v. Hendricks, 2009 WL 1477235 (3d Cir. May 28, 2009).

Here, Connors' general allegation that the jury verdict was against the weight of the evidence is unsupported by the record. There was sufficient testimony by the security officers for the jury to conclude that the elements of first-degree robbery were established in order to sustain the conviction. The Appellate Division addressed Connors' claim on direct appeal, and determined that there was sufficient evidence to support the

conviction.  The court also found the claim to be without sufficient merit to warrant discussion in a written opinion. (Ra14).  Accordingly, this Court finds that the state court's determination that the evidence was sufficient to sustain the verdict is neither contrary to nor an unreasonable application of controlling federal law.  Nor is the state court's factual determination unreasonable in light of the evidence presented. Therefore, Connors is not entitled to relief on this claim.

V.  <u>CERTIFICATE OF APPEALABILITY</u>

This Court next must determine whether a certificate of appealability should issue.  <u>See</u> Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.   An appropriate Order follows.


/s/JOEL A. PISANO
United States District Judge

DATED: February 14, 2011